**IN THE UNITED STATES DISTRICT COURT**
**FOR THE MIDDLE DISTRICT OF FLORIDA**
**OCALA DIVISION**

FERREIRA CONSTRUCTION
CO., INC., a New Jersey corporation,

Plaintiff,

v. Case No.: 26-cv-715

HERNANDO COUNTY BOARD
OF COUNTY COMMISSIONERS,
a political subdivision of the State of
Florida,

Defendant.
_______________________________________/

**COMPLAINT**

Plaintiff, FERREIRA CONSTRUCTION CO., INC. ("FCC"), hereby sues Defendant, HERNANDO COUNTY BOARD OF COUNTY COMMISSIONERS (the "County"), and alleges as follows:

**Parties, Jurisdiction and Venue**

1. FCC is a corporation organized and existing under the laws of the State of New Jersey, with its principal place of business in Branchburg, New Jersey. FCC is registered to do business in the State of Florida and maintains a regional office at 591 Pickettville Road, Jacksonville, Florida 32220.

2. Hernando County is a political subdivision of the State of Florida, acting by and through its Board of County Commissioners. The County is a citizen of the State of Florida.

3. This Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because this is a civil action between citizens of different States—FCC, a citizen of New Jersey, and the County, a citizen of Florida—and complete diversity of citizenship exists between the parties.

4. The matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs.

5. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events and omissions giving rise to FCC's claims occurred in this District, and the project and the property that is the subject of this action are situated in this District. Venue is also consistent with Section 8.18 of the Contract, which provides that venue for any dispute or litigation concerning the Contract "shall be in the appropriate court with territorial jurisdiction over Hernando County, Florida." Hernando County lies within the Middle District of Florida.

**The Contract**

6. On or about September 24, 2024, the County and FCC entered into Contract No. 24-CG00730/JG, a public-works construction contract with an original contract sum of $6,196,439.00 (the "Contract") for the Killian Water Treatment

Plant Upgrade (the "Project"). A true and correct copy of the Contract is attached hereto as **Exhibit A**.

7. Under the Contract, FCC agreed to furnish all labor, equipment, and materials necessary to perform the work in exchange for payment, subject to the terms and conditions set forth therein.

8. The County issued a Notice to Proceed on March 10, 2025, after which FCC commenced work on the Project pursuant to the terms of the Contract.

9. On several occasions, performance of the work was extended by events beyond FCC's control, including gopher-tortoise permitting and relocation restrictions and the relocation of an on-site power line by Withlacoochee River Electric Cooperative, for which Sections 9.19.B.1 and 9.19.B.2 of the Contract entitle FCC to extensions of the contract times.

10. FCC sought extensions of the contract time through change order requests served on the County and continued executing work on the Project in a timely and workmanlike manner.

## The Notice to Cure

11. On March 12, 2026, the County issued a Notice to Cure concerning FCC's alleged failure to apply polywrap to approximately 265 feet of 20-inch ductile-iron pipe, directing FCC to submit a written plan of action to address the deficiencies and a revised progress schedule by March 27, 2026. The County's

Notice to Cure further stated that, upon receipt, the County would review the plan and revised schedule to determine whether they were acceptable. A true and correct copy of the March 12, 2026, Notice to Cure is attached hereto as **Exhibit B**.

12. On March 27, 2026, FCC served on the County a response to the March 12, 2026, Notice to Cure, reminding the County of the numerous delays to the Project schedule that were outside of FCC's control, nonetheless committing to complete the polywrap application within approximately three to four weeks from plan approval and providing a revised progress schedule outlining FCC's plan to complete the remaining work on the Project. A true and correct copy of the March 27, 2026, response to the County's Notice to Cure is attached hereto as **Exhibit C**.

13. On April 29, 2026, the County requested additional information regarding FCC's March 27, 2026, revised progress schedule and its ability to complete the identified polywrap application in accordance therewith.

14. By letter dated May 11, 2026, FCC replied with a more detailed plan to complete the subject polywrap application, stating that the remaining work on the 20-inch ductile-iron pipe was in progress and was targeted for completion by June 22, 2026. A true and correct copy of FCC's May 11, 2026, letter is attached hereto as **Exhibit D**.

15. On May 26, 2026, the County responded to FCC's May 11, 2026, reply, stating "we find your reply acceptable" and, as to the polywrap, acknowledging that

"Ferreira has begun installing polywrap to the ductile iron pipe," thereby concluding the cure process initiated by the March 12, 2026, Notice to Cure, which was thereafter of no further force or effect. A true and correct copy of the County's May 26, 2026, letter accepting FCC's cure proposal is attached hereto as **Exhibit E**.

**The Acceleration Demand**

16. Almost immediately thereafter, the County directed FCC to accelerate all work on the Project in order to complete the Project by year-end 2026—several months earlier than the contractual time for completion accounting for delays outside of FCC's control, as shown on FCC's updated schedules provided to the County.

17. On June 19, 2026, in response to the County's acceleration directive, and pursuant to Sections 9.19.B.1 and 9.19.B.2 of the Contract, FCC submitted its response to the County's acceleration demand, which enclosed a proposed acceleration schedule to achieve the County's requested year-end 2026 completion date, and requested the County's written approval and its commitment to compensate FCC for the increased costs of acceleration. A true and correct copy of FCC's June 19, 2026, response to the County's acceleration directive is attached hereto as **Exhibit F**.

18. At the time of FCC's response to the County's acceleration directive, FCC had completed its application of polywrap on all but approximately 20 to 30 feet of the approximately 265 feet of ductile-iron pipe that was the subject of the

County's prior Notice to Cure, and the remaining section was located beneath the site roadway and required only two to three days of work.

19. However, to accommodate the County's acceleration demand and to meet FCC's proposed acceleration schedule submitted with its June 19, 2026, letter, FCC deliberately deferred completion of the remaining section of polywrap to later in the Project schedule so that FCC could prioritize critical-path work necessary to meet the County's acceleration target and to preserve the County's own access to wells on the site as necessary to complete such work.

20. FCC's decision to defer polywrap application of that limited section of pipe was discussed with the County's Senior Project Manager, Allen Turner, and the Engineer of Record's representatives at the June 16, 2026, progress meeting, and again with Mr. Turner on June 30, 2026. Without objection, the County permitted FCC to continue performing for nearly a month after the June 22, 2026, target date with knowledge that the limited, remaining section of pipe remained unwrapped, and the reason therefor.

21. Despite the County's acknowledgment and non-objection, the County did not provide a written response to FCC's June 19, 2026, proposed acceleration schedule and request for approval of compensation as FCC requested and as required by the Contract.

22. FCC followed up with the County on June 29, 2026, and July 14, 2026, requesting written approval of the proposed acceleration schedule and request for compensation. The County did not respond to either follow-up request.

**The County's Wrongful Termination**

23. Instead, on July 16, 2026, the County issued a Notice of Termination purporting to terminate the Contract "for default" under Section 9.23.A, effective immediately. The Notice rested on the single assertion that FCC had not completed the polywrap on the ductile iron pipe by June 22, 2026. A true and correct copy of the July 16, 2026, Notice of Termination is attached hereto as **Exhibit G**.

24. The County did not, before terminating, provide FCC any renewed written notice and opportunity to cure the alleged deficiency as required by Section 9.23.A.2, nor did the County provide the written notice required by Section 9.23.E as a predicate to any termination for cause.

25. By letter dated July 20, 2026, FCC, through counsel, rejected the County's purported termination, set forth in detail the grounds establishing that no default or cause existed, and provided written notice of FCC's claims arising from the County's wrongful termination pursuant to Section 9.16.E of the Contract. A true and correct copy of the July 20, 2026, letter is attached hereto as **Exhibit H**.

26. Despite this, following the wrongful termination, FCC continued to cooperate with the County in good faith to coordinate the storage, continued

fabrication, and delivery of materials FCC had procured and paid for so that the County could put those materials to use in the completed Project.

27. At the County's direction, and consistent with the County's August 20, 2026, instruction that all work completed and materials ordered to date be reflected on Pay Application No. 13, FCC prepared and submitted Pay Application No. 13.

28. After submittal, the County conditioned payment of Pay Application No. 13 on FCC's execution of a deductive change order that (i) would reduce the contract sum below the amount to which the parties agreed and that the Project documentation reflects, and—as originally proposed—(ii) called for a substantial completion date several months in the past, prior to termination and never agreed to by FCC.

29. Not willing to agree to the County's improper effort to coerce FCC into (i) waiving remedies to which it is duly entitled under the Contract and (ii) agreeing to a Substantial Completion date that was in the past and failed to account for previously acknowledged time extensions, FCC responded that it would only execute the deductive change order if the County acknowledged that such execution would not prejudice FCC's right to seek all remedies to which it was entitled under the agreed-upon Contract value and previously acknowledged time extensions. Failing to receive confirmation from the County that it would acknowledge FCC's

reservation of rights even if the deductive change order were executed, FCC refused to execute the deductive change order.

30. By letter dated September 14, 2026, FCC identified all amounts owed to it—both the costs incurred before the termination and the damages FCC sustained as a result of the termination—and demanded payment in full. A true and correct copy of the September 14, 2026, letter is attached hereto as **Exhibit I**.

31. Despite demand, the County has not responded at all to FCC's September 14, 2026, letter, has not invoked the Contract's permissive dispute resolution provisions (to the extent applicable) and has otherwise refused to pay the amounts due and owing to FCC.

32. All conditions precedent to the maintenance of this action have occurred, have been performed, have been waived, or have otherwise been excused.

33. FCC has retained the undersigned counsel to represent its interests in this matter and is obligated to pay a reasonable fee for their services.

## COUNT I
## BREACH OF CONTRACT

34. FCC realleges and incorporates paragraphs 1 through 33 as though fully set forth herein.

35. This is an action for damages against the County for breach of contract.

36. The Contract is a valid, binding, and enforceable agreement between FCC and the County.

37. FCC performed all of its obligations under the Contract, except to the extent any performance was excused, prevented, or rendered impossible by the acts or omissions of the County, including those deliberately deferred to comply with the County's directive to accelerate the Project schedule.

38. The County materially breached the Contract by, among other things: (a) wrongfully terminating the Contract "for default" under Section 9.23.A when no ground for default or cause existed, and without providing the notice and opportunity to cure required by Section 9.23.A.2 and Section 9.23.E; and (b) failing and refusing to pay FCC the amounts due and owing for work performed and materials and equipment furnished and stored under and in connection with the Contract, including the amounts reflected in Pay Application No. 12, Pay Application No. 13, Change Request No. 14, and Change Request No. 15.

39. Because the County's termination for default was wrongful and the Contract contains no clause converting that termination into a termination for convenience, the County's wrongful termination constitutes a total breach of the Contract and FCC is entitled to recover the ordinary expectation damages available under Florida law, unlimited by Section 9.23 of the Contract, and the lost-profits waiver in Section 9.23.A.3 does not apply.

40. Accordingly, as a direct and proximate result of the County's breaches, FCC has been damaged, including without limitation in the following amounts:

a. $1,914,781.77 for the unpaid balance of Pay Application No. 13;

b. $25,830.75 for the unpaid acceleration costs sought in Change Request No. 14;

c. $753,121.12 for compensable labor and equipment costs resulting from delays outside FCC's control, sought in Change Request No. 15;

d. $118,282.98 for post-termination rental-equipment charges and supplier cancellation fees;

e. $341,004.96 for lost profits FCC would have earned on the balance of the Contract but for the County's wrongful termination; and

f. $76,129.58 for the unpaid balance of Pay Application No. 12.

41. In the aggregate, FCC's damages are not less than $3,229,151.16, exclusive of prejudgment interest, costs, and the storage and equipment charges that continue to accrue while FCC stores and preserves materials and equipment pending the County's payment.

WHEREFORE, FCC respectfully requests that the Court enter final judgment against the County for breach of contract, awarding FCC its damages, together with prejudgment and post-judgment interest, costs, attorneys' fees, and such further relief as the Court deems just and proper.

**COUNT II**
**VIOLATION OF FLORIDA'S LOCAL GOVERNMENT PROMPT PAYMENT STATUTE (FLORIDA STATUTE § 218.71, et seq.)**

42. FCC realleges and incorporates paragraphs 1 through 33 as though fully set forth herein.

43. This is an action for damages against the County for violating Florida's Local Government Prompt Payment Statute.

44. Throughout the Project, FCC submitted pay applications seeking progress payments for work performed on the Project.

45. Pursuant to Florida Statute § 218.735(1)(a), the County was required to pay all undisputed portions of those pay applications within 25 business days of receipt, or within 10 business days of receipt of a revised pay application.

46. On July 10, 2026, FCC submitted to the County Pay Application No. 12, seeking payment of $76,129.58 for work performed on the Project between June 1, 2026, and June 30, 2026.

47. On August 5, 2026, FCC submitted to the County Pay Application No. 13 for all unpaid work performed through the date of termination. On August 14, 2026, the County rejected Pay Application No. 13, improperly conditioning processing on FCC's execution of the deductive change order described in Paragraphs 28 and 29 herein.

48. On August 26, 2026, FCC submitted to the County a revised Pay Application No. 13, seeking payment of $1,914,781.77 for unpaid work performed on the Project through the date of termination, as well as additional costs incurred purchasing, delivering and storing fabricated materials, pursuant to the County's express directive to include such amounts on revised Pay Application No. 13.

49. To date, despite notice to the County, the County has not issued undisputed payment to FCC for any amounts claimed due under Pay Application No. 12 or Pay Application No. 13.

50. Pursuant to Florida Statute § 218.735(9), FCC is entitled to interest at a rate of 2 percent per month, or the rate specified by contract, whichever is greater, on all unpaid amounts owed thereunder.

51. FCC is entitled to recover all attorneys' fees and costs reasonably incurred pursuant to Florida Statute § 218.76(3).

WHEREFORE, FCC respectfully requests that the Court enter final judgment against the County for violation of Florida's Local Government Prompt Payment Statute, awarding FCC its damages, together with prejudgment and post-judgment

interest, costs, attorneys' fees, and such further relief as the Court deems just and proper.

Dated: September 24, 2026.

/s/ *E. Coilin Thompson*
**ETHAN J. LOEB**
Florida Bar No. 0668338
EthanL@BLHTLaw.com
Eservice@BLHTLaw.com
RebekahR@BLHTLaw.com
HeatherW@BLHTLaw.com
**E. COLIN THOMPSON**
Florida Bar No.: 684929
ColinT@BLHTLaw.com
Eservice@BLHTLaw.com
RebekahR@BLHTLaw.com
HeatherW@BLHTLaw.com
**ELLIOT P. HANEY**
Florida Bar No.: 1018829
ElliotH@BLHTLaw.com
MarjorieP@BLHTLaw.com
**BARTLETT LOEB HINDS THOMPSON & ANGELOS**
1001 Water Street, Suite 475
Tampa, Florida 33602
Telephone: (813) 223-3888
Facsimile: (813) 228-6422
***Counsel for Plaintiff***